Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARISSA PORCUNA, KAREN SCHREIMAN, ROMY EDGE, and CELESTINA BENN, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE TALBOTS LLC,<br><br>*Defendant*. | Case No. 4:25-cv-10522-HSG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## Table of Contents


I. Introduction. 1

II. Parties. 6

III. Jurisdiction and Venue. 6

IV. Facts. 7

A. Defendant's fake sales and discounts. 7

B. Defendant's advertisements are unfair, deceptive, and unlawful. 39

C. Defendant's advertisements harm consumers. 40

D. Plaintiffs were misled by Defendant's misrepresentations. 42

E. Defendant breached its contract with and warranties to Plaintiffs and the putative Class. 48

F. No adequate remedy at law. 50

V. Class Action Allegations. 51

VI. Claims. 53

First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq. 53

Second Cause of Action: Violation of California's Consumer Legal Remedies Act 55

Third Cause of Action: Violation of California's Unfair Competition Law 58

Fourth Cause of Action: Breach of Contract 60

Fifth Cause of Action: Breach of Express Warranty 62

Sixth Cause of Action: Quasi-Contract/Unjust Enrichment 63

Seventh Cause of Action: Negligent Misrepresentation 64

Eighth Cause of Action: Intentional Misrepresentation 65

VII. Relief. 66

## I. Introduction.

1. Discounts are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2. While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3. Section 17500 of California's False Advertising Law prohibits businesses from making statements that they know or should know are untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4. Moreover, section 17501 of California's False Advertising Law provides, "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits advertising a former price that was not the prevailing price in the prior three months.

5. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised," and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6. Additionally, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

7. As numerous courts have found, fake sales violate these laws. And, they also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8. Defendant The Talbots LLC ("Talbots" or "Defendant") makes, sells, and markets exclusive clothing and accessories (the "Talbots Products" or "Products"). The exclusive Products are advertised and/or sold online through Defendant's website, talbots.com, via Defendant's catalog, and in brick-and-mortar stores.

9. Defendant lists purported regular prices and advertises purported limited-time sales offering steep discounts from those listed regular prices. For example:




*November 27, 2023*




*December 24, 2023*




*April 29, 2024*




*July 7, 2025*

10. Defendant advertises that these supposed discounts are limited in time, for example "Ends Sunday," "Limited Time," or "Last Day!").

11. In addition to these discounts, Defendant designates some of its Products as being marked down ("Markdown Products"). Markdown Products are shown in the "Sale" section of Defendant's website. For its Markdown Products, Defendant lists two prices: the former list prices (in other words, the purported regular price the Product supposedly sold for before it was placed on sale and designated a Markdown Product); and purported markdown prices (the purported price at which the Product is being sold due to the advertised markdown). Defendant also routinely advertises purported limited-time sales that apply to "all markdowns" that supposedly offer additional steep discounts off of the Markdown Products' purported regular markdown prices:




*September 3, 2023*




*October 12, 2024*




*February 14, 2025*

12. Like for the discounts that apply to its non-markdown Products ("Non-Markdown Products"), Defendant advertises that the supposed discounts on Markdown Products are limited in time, for example ("Until Midnight," "Last Chance," or "Flash Sale").

13. Far from being time-limited, however, Defendant's discounts—both the ones that apply to Non-Markdown Products and the ones that apply to Markdown Products—are routinely available.

14. As a result, everything about Defendant's price and purported discount advertising is false. For Defendant's Non-Markdown Products, the list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are

consistently available for less than that; and the purported discounts Defendant advertises are not the true discount the customer is receiving. For its Markdown Products, the supposed former list prices Defendant advertises are false and misleading, because those Products did not actually regularly sell at those prices before they were marked down, and instead were routinely discounted; the supposed regular markdown prices are false and misleading too, because the Markdown Products did not and do not actually regularly sell for those prices after being marked down, because additional discounts on Markdown Products are nearly always available; and the purported markdown discounts Defendant advertises are not a true limited-time discount the customer is receiving off the markdown price, but instead are consistently available.

15. As described in greater detail below, Plaintiffs bought both Non-Markdown and Markdown Products from Defendant from its website, talbots.com. When Plaintiffs made their purchases, a purported sale was going on, and Plaintiffs believed that they were being offered steep discounts from the purported regular prices of Non-Markdown Products, or the purported markdown regular prices of Markdown Products, that Defendant advertised. And based on Defendant's representations, Plaintiffs believed that, they were purchasing Products whose regular prices were the list prices or markdown regular prices that Defendant advertised, that they were receiving substantial discounts, and that the opportunity to get those discounts was time-limited. These reasonable beliefs are what caused Plaintiffs to buy from Defendant when they did.

16. The representations that Plaintiffs relied on, however, were not true. For the Non-Markdown Products: the list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that; and the purported discounts Defendant advertises are not the true discount the customer is receiving. And for the Markdown Products, the supposed former list prices Defendant advertises are false and misleading, because those Products did not actually regularly sell at those prices before they were marked down, and instead

were routinely discounted; the supposed regular markdown prices are false and misleading too, because the Markdown Products did not and do not actually regularly sell for those prices after being marked down, because additional discounts on Markdown Products are nearly always available. Plus, for all of Defendant's Products, the purported discounts Defendant advertises are not a true limited-time discount the customer is receiving off the purported regular price, but instead are consistently available.

17. Plaintiffs bring this case for themselves and other customers in California who purchased Talbots Products.

## II. Parties.

18. Plaintiff Marissa Porcuna is domiciled in Bay Point, California.

19. Plaintiff Karen Schreiman is domiciled in Redondo Beach, California.

20. Plaintiff Romy Edge is domiciled in Azusa, California.

21. Plaintiff Celestina Benn is domiciled in Vallejo, California.

22. The proposed Class includes citizens of California.

23. Defendant The Talbots LLC is a Delaware limited liability company with its principal place of business in Hingham, Massachusetts.

## III. Jurisdiction and Venue.

24. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed Class are citizens of a state different from Defendant.

25. The Court has personal jurisdiction over Defendant because Defendant sold Talbots Products to consumers in California, including to Plaintiffs.

26. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state. Defendant advertises and sells its Products to customers in this District, serves a market for its Products in this District, and Ms. Porcuna's claims

arise out of Defendant's contacts in this forum. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

**IV. Facts.**

**A. Defendant's fake sales and discounts.**

27. Defendant Talbots manufactures, distributes, markets, and sells exclusive clothing and accessories products ("Products"). The exclusive Products are advertised and/or sold online through Defendant's website, talbots.com, via Defendant's catalog, and in brick-and-mortar stores.

28. Non-Markdown Products: For Products that are not on markdown, Defendant advertises a purported list price and a purported discount off that list price. For example, on March 29, 2024, the following Products were advertised with a purported list price. The Products were then advertised as being 25% off of this purported regular price due to a purported discount offered by Defendant (the additional discount applies once a consumer places the Product in their "bag"):




29. Markdown Products: For Products that are marked down, Defendant consistently advertises a purported former regular price in strikethrough font, a purported markdown price in red font, and a purported additional discount off that markdown price. For example, on July 20, 2024, the following Markdown Products were advertised, on the "Sale" section of Defendant's website, with former list prices (in

strikethrough font) and purported markdown regular prices (in red font). The Products were advertised as being an additional 40-50% off the purported markdown prices due to a purported discount offered by Defendant (again, the additional discount applies once a consumer places the Product in their "bag"):




30. For both Non-Markdown and Markdown Products, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

31. For both Non-Markdown and Markdown Products, Defendant frequently advertises steep discounts on its Products. Indeed, Talbots itself admits that it offers so many promotions that "[t]here's always a way to save at Talbots!"[1] The advertised discounts regularly offer "X% Off." Reasonable consumers reasonably interpret Defendant's advertisements to mean that they will be getting a discount off of the prices that Defendant usually and regularly charges for its Products.

[1] https://www.talbots.com/clothing/coupons-and-promotions/coupons-and-promotions.

32. Defendant's discounts, however, run constantly; and Defendant advertises them prominently on the website. For example, Talbots advertises its promotions prominently on its home page, on banners at the top of every page on the website, on product category pages (like "Dresses"), on individual product pages, and during the checkout process. On various pages, Defendant advertises that the advertised discounts offer X% off of its Products, or else show the Products with purported former prices in strikethrough font next to the purported discounted price. In addition, Talbots advertises the supposed promotions that apply to markdowns in particular on the "Sale" page of its website, where Markdown Products are displayed. Some examples of this advertising are shown below:




*May 23, 2023 (home screen)*




*April 6, 2025 (website banner)*




*March 29, 2024 ("Clothing" page)*




*May 2, 2025 (Non-Markdown Product page)*




*November 18, 2025 (Markdown Product page)*




*November 19, 2025 (checkout page for Non-Markdown Product)*




*November 19, 2025 (checkout page for Markdown Product)*

**<u>Non-Markdown Products</u>**

33. On its website, talbots.com, Defendant regularly offers sitewide sales that purport to offer steep discounts of 25%, 30%, 40%, and even 50% off of the purchase of one or more of any of Defendant's Non-Markdown Products.[2] Example screenshots of Defendant's sitewide sales are provided on the following pages:

[2] These sales routinely apply to Markdown Products as well, or else are paired with additional, even steeper discounts on Markdown Products (for example, "25% off your purchase" paired with "extra 60% off markdowns"). The Complaint discusses promotions aimed specifically at Markdown Products below.




*October 22, 2023*




*November 27, 2023*




*January 11, 2024*




*April 29, 2024*




*July 14, 2024*




*August 19, 2024*




*November 17, 2024*




*January 3, 2025*




*April 6, 2025*




*June 30, 2025*

34. To better understand Defendant's discounts, Plaintiffs' counsel conducted an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[3] As part of this investigation, using the Wayback Machine and additional real-time screenshots of Defendant's website, Plaintiffs' counsel randomly collected, where available, two screenshots a month of the homepage of talbots.com from January 2023 to September 2025, for a total of 65 screenshots.[4] A review of these 65 screenshots showed the following.

35. First, Defendant advertised sitewide sales—sales that apply to all products on the website—most of the time. This alone renders Defendant's ads deceptive: when consumers see a special, limited-time percentage off sale, they reasonably understand this to mean that if they buy during the sale, they will get a special, good price that is usually unavailable; not that if they buy during the sale they will pay a price that is available most of the time and that most people pay. But it gets worse.

36. On days where Defendant does not offer sitewide deals on its website, it still offers sales on large quantities of its Non-Markdown Products. For example, Defendant regularly advertises substantial sales on all Products within certain broad

[3] The Internet Archive, available at www.archive.org, is a library that archives web pages.

[4] The Wayback Machine does not have two functioning screenshots of the Talbots homepage for April 2025. So, for this month, counsel was only able to collect one screenshot.

Product categories that often encompass most of Defendant's Products (*e.g.*, "25% off all tops, pants, jeans, & shorts."):




*March 16, 2024*




*May 10, 2024*




*October 12, 2024*




*February 24, 2025*




*November 18, 2025*

37. In addition to these frequent Product category sales, Defendant also offers a myriad of other promotions providing additional sales and discounts on certain Products. For example, Defendant regularly advertises X% off sales on certain Products (through, for example, it's "flash sale[s]" and advertised discounts on "select styles"). Below are some examples of these sales:




*March 16, 2023*




*March 25, 2023*




*June 1, 2023*




*February 14, 2024*




*April 5, 2024*




*June 3, 2024*




*September 2, 2025*

38. These sales are not limited scope sales that apply only to a select few Products. Instead, Defendant's frequent Product category, select style, and flash sales offer substantial discounts on large proportions of Defendant's Products. For example, on May 9, 2023, Defendant advertised a sale offering "25% off all tops":




39. And that sale—even while limited to just tops, versus Defendant's other frequent sales on multiple Product categories, as shown above—offered a substantial discount on nearly 1,000 out of 2,263—or 44%—of Defendant's total listed clothing Products that day:




40. As a second example, on November 18, 2025, Defendant advertised both a "Flash Sale" offering "50% off all Coats & Jackets" and a "Mix & Mingle" sale offering "30% off dresses, skirts, accessories, shoes & party favorites":







41. On that day, the "Flash Sale" offered a substantial discount on more than 300 Products, and the "Mix & Mingle" sale offered a substantial discount on more than 650 Products. So together, these sales again offered 30-50% off nearly 1,000 different Products:







42. Finally, in addition to sales offering X% off discounts on specific Products, Defendant consistently offers still more promotions to consumers. These promotions further impact the true regular prices of Defendant's Products. Below are some examples:




*June 10, 2023*




*September 10, 2024*




*February 24, 2025*




*March 19, 2025*

43. Reasonable consumers believe that Defendant's sales are only available for a limited time, but, in reality, they are continuously replaced by similar sales. For example, on May 10, 2023, Defendant advertised that it was the "last day" for its 25% off tops sale:



44. Reasonable consumers reasonably understood this language to mean that this was the final day on which consumers could purchase Defendant's tops for 25% less than they typically sell for. However, the next day, on May 11, 2023, Defendant advertised a new sale offering "25% off tops, pants & jeans":




45. Using the tactics described above, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during a promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price, Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

46. Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises for Non-Markdown Products are Defendant's regular prices and former prices (that is, the price at which the goods were actually regularly offered for sale on the website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises for the Non-Markdown Products represent the amount that consumers formerly and regularly had to pay on the website for those Products, before the sale began, and will again have to pay for the Products when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, and after the sale ends, consumers buying from Defendant on the website had to (or will have to) pay the list price to get the item and did not (or will not) have the opportunity to get a discount from that list price.

47. Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market values of the Non-Markdown Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant routinely offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises for Non-Markdown Products are not actually Defendant's regular or former prices, or the prevailing prices for the Products. And, the list prices do not represent the true market value for the Products, because the Products are consistently available for less than that on the website, and customers did not have to formerly and regularly pay that amount to get those items. Finally, the purported discounts Defendant advertises are not the true discount the customer is receiving.

48. The combined effect of Defendant's sitewide and other wide-reaching sales is that Defendant's Non-Markdown Products are consistently available at a discount, the vast majority of the time. Said differently, Non-Markdown Products are available for a discount—via either a sitewide or other sale—so frequently that the advertised list prices are not the prices at which the Products are usually sold, as consumers reasonably believe. Instead, because of the constant discounts, their usual, regular, prevailing price is far lower. Put differently, the list prices that Defendant advertises for its Non-Markdown Products are not actually Defendant's regular prices, and the purported discounts Defendant advertises are not the true discount the customer is receiving. Defendant's regular prices are much lower than advertised; and so too are their discounts.

**Markdown Products**

49. As mentioned above, Defendant designates certain Products as "markdown" Products. These Products are supposedly marked down in price from their supposed list price.

50. Defendant designates a substantial proportion of its Products as marked down – far more than is typical. For example, on November 19, 2025, Defendant

advertised 3,687 total items on the "Clothing" page (which appears to include clothing, accessories, and shoes Products, both full price and marked down). On the same day, Defendant advertised a total of 2,938 Markdown Products on the "Sale" page (again, this page appears to include clothing, accessories, and shoes Products). As a second example, on August 2, 2024, Defendant advertised 2,066 total items on the "Clothing" page, and 1,907 Markdown Products on the "Sale" page. And finally, as a third example, on October 1, 2024, Defendant advertised 2,214 items on the "Clothing" page, and a total of 1,620 Markdown Products on the "Sale" page.

51. For Markdown Products, Defendant includes additional price advertising. Like for Non-Markdown Products, Defendant advertises list prices for Markdown Products. But unlike for Non-Markdown Products, those list prices are in strikethrough font (*e.g.* ~~$99.50~~). Also, unlike for Non-Markdown Products, for Markdown Products, Defendant lists a second price—the markdown price—in bold, colorful font (*e.g.*, **$69.99**). For example, the following Markdown Products were offered on Defendant's "sale" page on November 18, 2025, with purported former list prices and purported markdown regular prices:









52. Reasonable consumers understand this price advertising to convey that the list price in strikethrough font is the price at which the Product regularly and usually retailed before it was marked down, and the markdown price is the price at which the Product regularly and usually retailed once it was marked down. Defendant's Markdown Products, however, did not regularly and usually retail for the list price, for the reasons described above with respect to the Non-Markdown Products. Worse, the Markdown Products almost never sold for, or sell for, the purported regular markdown prices, either. This is because on Markdown Products, Defendant almost always offers substantial additional discounts, beyond the supposed markdown prices shown above. For example, the three Products listed above are shown with bold, red purported markdown regular prices. However, an additional 50% off of the markdown regular price was available on each of them at the time, because of an advertised sale that

applied to "all markdowns" (the final price was shown once a consumer added a Product to their "bag"). The following are examples of Defendant's X% off promotions on Markdown Products:




*January 2, 2023*




*February 20, 2023*




*July 2, 2023*




*June 15, 2024*




*August 28, 2024*




*September 16, 2025*




*January 18, 2025*

53. As discussed above, Plaintiffs' counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine. That investigation confirms that Defendant's additional discounts on Markdown Products are almost always available. For example, counsel again reviewed the 65 randomly collected screenshots of Defendant's home page discussed above, and they evidence that Defendant offers additional % off discounts on Markdown Products approximately 90% of the time.

54. Reasonable consumers viewing Defendant's markdown sales reasonably believe that the Markdown Products (1) regularly and formerly sold for the purported former list prices (shown in strikethrough font) prior to being designated Markdown Products and placed on sale; (2) now have, since being designated a Markdown Product, regularly sold for the markdown price (shown in red font); and (3) are available at a discount from the markdown regular prices for a limited time after which point they will again be sold for their usual, markdown regular prices.

55. Reasonable consumers believe that Defendant's additional discounts on Markdown Products are only available for a limited time, but, in reality, they are continuously replaced by materially similar sales. For example, on June 24, 2025, Defendant advertised that it was the "last day" for its sale offering an additional "30% off markdowns":




56. Reasonable consumers reasonably understood this language to mean that this was the final day on which consumers could purchase Defendant's Markdown Products for 30% less than they typically sell for, or, in other words, 30% less than the markdown regular prices advertised for the Products. However, the next day, on June 25, 2025, Defendant advertised a new sale offering "40% off" a consumer's "entire purchase," and specifically noted that the sale "include[d] markdowns!":







57. Using the tactics described above, Defendant leads reasonable consumers to believe that they will get a legitimate discount on the Markdown Products they are purchasing. In other words, Defendant leads reasonable consumers to believe that if they buy now, they will get a Product worth more at a discounted, lower price. This

creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

58. Based on Defendant's advertisements, reasonable consumers purchasing Markdown Products reasonably believe that the former list prices Defendant advertises (in strikethrough font, with all Markdown Products) were Defendant's regular prices and former prices for those Products before they were designated Markdown Products. In other words, reasonable consumers reasonably believe that the former list prices Defendant advertises represent the amount that consumers regularly and formerly had to pay on Defendant's website for these Products, before the Products were designated Markdown Products. Said differently, reasonable consumers reasonably believe that, prior to the Products being designated Markdown Products, consumers buying from Defendant had to pay the former list prices to get the Products and did not have the opportunity to get a discount from those prices. Reasonable consumers also reasonably believe that the former list prices Defendant advertises for the Markdown Products represented the true market value of the Products, at least when they are not on markdown.

59. Based on Defendant's advertisements, reasonable consumers purchasing Markdown Products also reasonably believe that the markdown regular prices that Defendant advertises (in bold colorful font, with all Markdown Products) is the regular price that the Product sells for when it is marked down. In other words, reasonable consumers reasonably believe that the markdown regular prices Defendant advertises represent the amount that consumers now regularly have to pay to purchase the Markdown Products, when they are on markdown. Said differently, reasonable consumers reasonably believe that, prior to the additional limited-time sale on Markdown Products, consumers buying Markdown Products from Defendant had to pay the markdown regular prices to get the Products and did not have the opportunity to get a further discount from those prices. Reasonable consumers also reasonably believe that, once any limited-time promotion on the Markdown Products ends, consumers will

again have to pay the markdown regular prices. Finally, reasonable consumers believe that prevailing market prices for the Markdown Products are the markdown regular prices, when they are marked down.

60. In truth, however, everything about Defendant's price and purported discount advertising is false. Because Defendant offers constant sales, even on Non-Markdown Products, the advertised former list prices were never the true regular prices of the Products, not even before they were designated Markdown Products, and do not represent the true market value for the Products when not on markdown, because the Products were consistently available for less than that (even before they were marked down), and customers did not have to regularly pay that amount to get those Products previously. In addition, the purported markdown regular prices are not the regular prices of the Products since being designated Markdown Products because Defendant almost always offers additional discounts on the Markdown Products. Thus, consumers are not receiving the discount they were promised. Finally, the prevailing market prices of the Products are lower than the markdown regular prices, and lower than the list prices, because the Products are almost always sold for an additional discount.

**Talbots offers its sales across retail channels**

61. Talbots Products can be purchased online, in Talbots' brick-and-mortar stores, or via phone call.[5] Defendant offers the same or materially similar sales on Products purchased through its brick-and-mortar stores and over the phone as it advertises on its Website. Indeed, the "Coupons and Promotions" page on the Talbots Website explains that "[t]here's always a way to save at Talbots," and continues that whether consumers "print a coupon and present it in stores, enter an offer code at

[5] Talbots mails out a catalog to certain consumers. To the extent it makes sales as a result of this catalog, the vast majority of these sales are made by placing an order online (on the Talbots Website), or by calling Talbots to place the order. Consumers may also be able to send in orders via mail, but because this option is more burdensome, the vast majority of consumers who review the catalog choose to place orders online or via the phone.

checkout, or simply mention a promotion to a Talbots Associate on the phone, it's so easy to save[.]"[6]

62. <u>In Store Sales</u>: As shown above, the representations on the Website routinely specify that the sales are available in stores, as well as online. For example:




*February 20, 2023*




*July 14, 2024*




*March 16, 2024*

---

[6] The Coupons and Promotions page has included this language since at least December 2, 2022. It is currently available at: https://www.talbots.com/clothing/coupons-and-promotions/coupons-and-promotions.




*June 3, 2024*







*August 28, 2024*




*January 3, 2025*




*April 6, 2025*

63. Indeed, Plaintiffs' counsel reviewed the screenshots collected as part of its investigation into Talbots pricing and determined that the sales advertised on the website expressly applied to in store purchases the majority of the time. For example, of the days on which screenshots of the website were collected and a sitewide sale was advertised, approximately 74% of the time the screenshots expressly advertised that the sales applied both online and in stores.

64. To confirm that the sales are advertised and apply in stores as well as online, Plaintiffs' counsel's staff visited a Talbots store on March 10, 2026. On that day, the Website advertised the following sale:




65. And, on that day, the same sale was advertised prominently in the Talbots brick-and-mortar store. For example:









66. As shown above, Defendant's in-store advertisements are substantially similar to those shown online. In particular, for the example above, the online advertisements represent that consumers can receive 40% off on one item and 30% off on everything else. And the in-store representations make the same %-off promises. In both cases, reasonable consumers reasonably understand the advertising to mean that, if they purchase during the sale, they will receive a 30-40% discount off of the Products' regular prices.

67. Plus, even when Defendant's homepage does not expressly state that a given sale applies in stores as well as online, the sales are routinely still available in stores. For example, on August 18, 2025, Defendant advertised a "25% off your purchase" sale. On the Website's homepage, it did not specify whether the sale applied in stores as well:




68. However, in an email sent to consumers on the same day, it made clear that the sale applied online and in stores:




69. <u>Over the Phone Sales</u>: Consumers can also purchase from Talbots via phone. And the sales advertised on Defendant's website are available for over-the-phone purchases too. Indeed, Defendant's Coupons and Promotions Page recognizes that the sales are available over the phone (directing consumers to "mention a promotion to a Talbots Associate on the phone" to receive the advertised promotions).

70. The Talbots website also routinely notes that specific advertised sales are available over the phone (as well as online and in stores). For example:

> 50% off entire purchase valid 7/5/25 - 7/7/25. Offer valid at www.talbots.com, by phone at 1-800-825-2687 and at Talbots Retail stores. Cannot be used at Talbots Outlet or Clearance stores. Exclusions apply. Discount will appear in shopping bag.

*July 7, 2025*

> 25-40% off select regular-price styles valid 9/2/25 - 9/8/25. Offer valid at www.talbots.com, by phone at 1-800-825-2687 and at Talbots Retail stores. Cannot be used at Talbots Outlet or Clearance stores. Discount will appear in shopping bag. Not combinable.

*September 2, 2025*

> 40% off your highest regular-price item and 30% off the remaining merchandise purchase valid 3/10/26 - 3/15/26. Offer valid at www.talbots.com, by phone at 1-800-825-2687 and at Talbots Retail stores. Cannot be used at Talbots Outlet or Clearance stores. Exclusions apply. Discount will appear in shopping bag.

*March 10, 2026*

71. Thus, because the advertised sales have been available via phone too, reasonable consumers who purchase over the phone have received the purported discounts (either because they mention them—reasonable consumers look for and find available discounts on Products that they're purchasing, especially when they are as well advertised as Talbots' discounts—or because the purported discounts are automatically applied by the Talbots sales representative handling the phone call).

72. So, in short, Defendant routinely sells its products at purported discounts (and thus, not at the purported regular prices) online, in-stores, and via the phone. Defendant's Products, however, are primarily sold online and through Defendant's retail stores. Indeed, as Defendant recognizes, the Talbots Website contains the "largest number of items for a season, in the most colors and all sizes currently available," as compared to its stores (and catalog).[7] And modern consumers are used to online and in-store shopping for clothing, rather than placing orders via phone or mail. So, because the Talbots Products are most commonly sold on Defendant's website and in

---

[7] https://www.talbots.com/faqs/faqs.html (FAQ: "Do your stores carry all of the items that are in your catalogs and on your website?")

Defendant's stores, they are most commonly sold for the purportedly discounted prices available on Defendant's website and in-stores.

**B. Defendant's advertisements are unfair, deceptive, and unlawful.**

73. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it is not.

74. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

75. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

76. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

77. And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

78. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises list prices in strikethrough font that were not the prevailing market price in the three months immediately preceding the advertisement; nor were they the true regular prices of those Products. Defendant also

advertises markdown prices in colorful font that were not the prevailing market price in the three months immediately preceding the advertisement; nor were they the true regular prices of those Products, not even on markdown. In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engages in unlawful, unfair, and deceptive business practices.

**C. Defendant's advertisements harm consumers.**

79. Based on Defendant's advertisements, reasonable consumers expect that, for Non-Markdown Products, the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products and that these are former prices that Defendant sold its Products at before the time-limited discount was introduced. And, for Markdown Products, reasonable consumers expect that the former list prices that Defendant advertises are the prices that the Products regularly and formerly sold for, before the Products were designated Markdown Products, and that the purported markdown regular prices are the prices the Products regularly sell for since being designated Markdown Products.

80. Reasonable consumers also expect that, if they purchase a Non-Markdown Product during the sale, they will receive an item whose regular price and market value is the advertised list price and that they will receive the advertised discount from the regular purchase price. If they purchase a Markdown Product without a time-limited promotion, reasonable consumers expect that they are getting a Product whose former regular price (before being designated a Markdown Product) and market value is the advertised former list price, and that they will receive the Product at a lower price (the markdown regular price) only because Defendant has designated it a Markdown Product

and offered it for a discount. If they purchase a Markdown Product during a time-limited promotion offering an additional discount, reasonable consumers expect the same and moreover expect they will receive the advertised discount from the markdown regular price, which they understand to be the regular price of the Product since it was marked a Markdown Product (and the price they'd have to pay after the time-limited sale ends).

81. In addition, consumers are more likely to buy the Product if they believe that the Product is on sale and that they are getting a Product with a higher regular price and/or market value at a substantial discount.

82. Consumers who are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[8] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[9]

83. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[10]

84. Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its

---

[8] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[9] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[10] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

Non-Markdown and Markdown Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiffs and the Class paid more for the Products they bought than they otherwise would have.

**D. Plaintiffs were misled by Defendant's misrepresentations.**

Karen Schreiman

85. Plaintiff Karen Schreiman has purchased a number of Products from Talbots. For example, on July 3, 2024, Plaintiff Schreiman made a purchase from Talbots on the website, talbots.com. She made this purchase while residing in Redondo Beach, California. At the time, Defendant advertised a sale offering 50% off the "entire site":




86. During the sale, Plaintiff purchased a Bamboo Minaudière purse, which was listed with a regular list price of $159.00. Pursuant to the sale, she received a 50% discount, and paid a purportedly discounted final price of $79.50 (plus shipping and handling).

87. As a second example, on January 1, 2024, Plaintiff Schreiman made another purchase from Talbots on the website while residing in Redondo Beach. At the time, Defendant advertised a sale offering an "extra 40% + 24% off all" Markdown Products:




88. During the sale, Plaintiff purchased Cassidy Sherpa Loafers in Suede. The loafers were listed with a specific former list price, as well as a markdown price of

$124.99. Pursuant to the sale, she received 40% off, plus an additional 24% off, of the markdown price, and paid a purportedly discounted final price of $56.99 (plus shipping and handling).

89. For both of these purchases, Ms. Schreiman read and relied on Defendant's representations, specifically that the Products had the regular prices listed on the Product pages, and that she was being offered specific discounts off of those regular prices (including the %-off discounts advertised) (for the January 1, 2024 purchase, a discount off of both the former list price and an additional discount off of the markdown regular price). She relied on the fact that she would be receiving the advertised discounts of $79.50 and $68.00 off of the Products' regular prices, and that the sales were limited in time, and not consistently available.

<u>Marissa Porcuna</u>

90. On September 22, 2024, Plaintiff Marissa Porcuna made a purchase from Talbots on the website, talbots.com. She made this purchase while residing in Bay Point, California. At the time, Defendant advertised a sale offering 40% off the purchase of one item, and 30% off the rest of its Products:




91. During the sale, Plaintiff purchased a Non-Iron Popover shirt in Royal Blue, which was listed with a regular list price of $109.00. Pursuant to the sale, she received a 40% discount, and paid a purportedly discounted final price of $65.40 (plus shipping and handling).

92. For her purchase, Ms. Porcuna read and relied on Defendant's representations, specifically that the Product had the regular price listed on the Product page, and that she was being offered a specific discount off of the regular price (the %-off discount advertised). She relied on the fact that she would be receiving the advertised discount of $43.60 off of the Product's regular price, and that the sale was limited in time, and not consistently available.

Celestina Benn

93. Plaintiff Celestina Benn has purchased a number of Products from Talbots. For example, on or around February 14, 2025, Plaintiff Benn made a purchase from Talbots on the website, talbots.com. She made this purchase while residing in Placentia, California. During this period, Defendant advertised extensive sales:




*February 14, 2025*




*February 14, 2025*




*February 15, 2025*




*February 15, 2025*

94. Each of the Products that Plaintiff Benn purchased (including a Wrapped Floral Satin Cowl-Neck Dress for a purportedly discounted price of $29.75; a Love Stripe Crewneck Sweater for a purportedly discounted price of $20.40; an Organic Cotton Poplin Scallop Print Pajama Shirt for a purportedly discounted price of $12.75; a Soft Cable Knit Crewneck Sweater for a purportedly discounted price of $12.75; a Pointelle Round Yoke Sweater for a purportedly discounted price of $12.75; a Berkshire Wool Blend Crop Jacket for a purportedly discounted price of $34.00; and a Fringe Stripe Tweed Jacket for a purportedly discounted price of $34.00) were available at a substantial discount due to Defendant's advertised sales. For example, on February 15, 2025, the Soft Cable Knit Crewneck Sweater that Plaintiff purchased was advertised on

Defendant's website with a former list price of $89.50-99.50 and a markdown price of $69.99-79.99:




95. Due to Defendant's discounts, however, Plaintiff paid only $12.75 (plus shipping and handling) for the Product.

96. Each Product Plaintiff purchased was listed as having a particular regular price (and, for Markdown Products, a former list price), and Defendant represented that Plaintiff Benn was receiving substantial discounts off of the purported regular prices. Each of these items were listed as having a higher regular price, and as being on sale.

97. Ms. Benn read and relied on Defendant's representations, specifically that the Products had the regular prices listed on the Product pages, and were being offered at specific discounts from those regular prices (including the %-off discounts advertised) (and, for the Markdown Products, a discount off of both the former list price and an additional discount off of the markdown price). She relied on the fact that she would be receiving the advertised discounts off of the Products' regular prices. She also believed that the sale was limited in time, and not consistently available.

Romy Edge

98. On or around April 19, 2025, Plaintiff Romy Edge made a purchase from Talbots on the website, talbots.com. She made this purchase while living in Azusa, California. At the time, Defendant was advertising a substantial sale that impacted the price of the Product Ms. Edge purchased.

99. During the sale, Ms. Edge purchased a pair of shoes, the Izzy Asymmetric Espadrille Flats, which were listed with a specific regular list price. Pursuant to the sale, she received a %-off discount, and paid a purportedly discounted final price of $69.65 (plus shipping and handling).

100. For her purchase, Ms. Edge read and relied on Defendant's representations, specifically that the Product had the regular price listed on the Product page, and that she was being offered a specific discount off of that regular price (the %-off discount advertised). She relied on the fact that she would be receiving the advertised discount off of the Product's regular price, and that the sale was limited in time, and not consistently available.

* * *

101. Based on Defendant's representations described above, Plaintiffs reasonably understood that Defendant usually (and formerly, before any markdowns or promotions) sold the Products they were purchasing at the published list prices, that these prices were the market value of the Products that they were buying, that they were receiving specific advertised discounts off of the Products' regular prices (for Non-

Markdown Products, the list prices, and for Markdown Products, the markdown prices), and that advertised discounts from promotions were only available for a limited time (during the limited-time promotion). Plaintiffs would not have made their purchases, at the prices they paid, if they had known that the Products were not really discounted as advertised, and that they would not be receiving the advertised discounts. They also overpaid for the Products because the fake sales increased consumer demand and drove up prices.

102. In reality, as explained above, Defendant's products, including the Products that Plaintiffs purchased, are regularly available at a discount from the purported regular prices. In other words, Defendant did not regularly sell the Products that Plaintiffs purchased at the purported regular prices, and the Products were not discounted as advertised. Plus, the sales were not limited time—Defendant's products are regularly on sale.

103. Plaintiffs face an imminent threat of future harm. They would purchase Products from Defendant again in the future if they could feel sure that Defendant's list and purported regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiffs have no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while they could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent). Accordingly, Plaintiffs are unable to rely on Defendant's advertising in the future, and so they cannot purchase the Products that they would like to purchase.

### E. Defendant breached its contract with and warranties to Plaintiffs and the putative Class.

104. When Plaintiffs, and other members of the putative Class, purchased and paid for Talbots Products that they bought as described above, they accepted offers that

Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the advertised discounted price.

105. Defendant's advertisements, including its website, and in email confirmations, list the regular prices of the items that Defendant promised to provide. For Non-Markdown Products, Defendant agreed to provide Plaintiffs and Class Members with Products with regular prices and market values equal to the list prices, and a discount equal to the difference between the regular prices and the discount prices paid by Plaintiffs and the putative Class. For example, Defendant offered to provide Ms. Schreiman a Bamboo Minaudière purse with a regular price and market value of $159.00 at a discount of 50%. For Markdown Products that were not advertised as being subject to any additional discount on markdowns, Defendant agreed to provide a Product with a pre-markdown regular price and market value of the list price, and a discount equal to the difference between the list price and the advertised markdown price. And for Markdown Products that were subject to additional discounts, Defendant agreed to provide a Product with a pre-markdown regular price and market value of the list price (in strikethrough font), a regular markdown price of the advertised markdown price (in colorful font), and discounts equal to the difference between the list price and the markdown price, plus an additional discount in the amount advertised.

106. Defendant also warranted that the regular price and market value of the Products Plaintiffs and members of the Class purchased before any markdowns were the advertised list prices and warranted that Plaintiffs were receiving a specific discount on the Products. Similarly, Defendant warranted that the advertised markdown prices of the Markdown Products Plaintiffs and Class Members purchased were the regular prices of those Products when they were marked down. And, Defendant warranted that Plaintiffs and Class Members were receiving specific discounts on the Products (off of the purported list prices and, for Markdown Products sold at a further discount, off the purported markdown regular prices).

107. The regular prices and market values of the items Plaintiffs and the putative Class Members would receive, and the amount of the discount they would be provided off the regular prices of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

108. Plaintiffs and other members of the putative Class performed their obligations under the contract by paying for the items they purchased.

109. Defendant breached its contracts by failing to provide Plaintiffs and other members of the putative Class with Products that have a regular, pre-markdown price and market value equal to the regular price displayed, and by failing to provide the discount it promised. And it additionally breached its contracts with Plaintiffs and other Class Members who purchased Markdown Products at an additional discount by failing to provide Plaintiffs and other members of the putative Class with Products that have a regular markdown price equal to the regular markdown price displayed, and by failing to provide the further discount promised. Defendant also breached warranties for the same reasons.

**F. No adequate remedy at law.**

110. Plaintiffs seek damages and, in the alternative, restitution. Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law.

111. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiffs' equitable claims are different and do not require the same showings as Plaintiffs' legal claims. For example, Plaintiffs' FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiffs may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of their legal claims.

112. In addition, to obtain a full refund as damages, Plaintiffs must show that the Product they bought has essentially no market value. In contrast, Plaintiffs can seek restitution without making this showing. This is because Plaintiffs purchased Products that they would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

113. Furthermore, the remedies at law available to Plaintiffs are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

114. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiffs face. Only an injunction can remedy this threat of future harm. Plaintiffs would purchase or consider purchasing Products from Defendant again in the future if they could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiffs have no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiffs are unable to rely on Defendant's advertising in the future, and so cannot purchase Products they would like to purchase.

## V. Class Action Allegations.

115. Plaintiffs bring the asserted claims on behalf of the proposed Class of:

- California Class: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Talbots Products advertised at a discount or markdown.

116. The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been

finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability***

117. The proposed Class contains members so numerous that separate joinder of each member of the Class is impractical. There are tens or hundreds of thousands of Class Members.

118. Class Members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

119. There are questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiffs and the proposed Class.

***Typicality & Adequacy***

120. Plaintiffs' claims are typical of the proposed Class. Like the proposed Class, Plaintiffs purchased Talbots Products advertised at a discount. There are no conflicts of interest between Plaintiffs and the Class.

***Superiority***

121. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

**First Cause of Action:**

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq.**

**(By Plaintiffs and the Class)**

122. Plaintiffs incorporate each and every factual allegation set forth above.

123. Plaintiffs bring this cause of action on behalf of themselves and members of the California Class.

124. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

125. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiffs and Class members.

126. As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by listing a higher price, and displaying it next to a discount offer (such as "30% off, discount in bag") and by placing purported former prices in strikethrough font. Reasonable consumers would understand prices advertised before the discounts shown, and prices in strikethrough font, denote "former" prices, i.e., the prices that Defendant charged before the time-limited discount went into effect (or for Markdown Products, before items were designated Markdown Products).

127. The prices advertised by Defendant are not Defendant's regular prices for its Products. The list prices for Non-Markdown Products are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there are consistently heavily-advertised promotions ongoing entitling consumers to a discount. Moreover, for the same reasons, those prices were not the regular former prices of the Products. Similarly, for Markdown Products, the supposed former list prices Defendant advertises were not the regular prices before the Products were marked

down, and instead were routinely discounted, and the supposed regular markdown prices are not the regular prices since the Products have been marked down because additional discounts on Markdown Products are nearly always available. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements that its discounts are limited in time (such as representations that it's the "last day," expiring soon, or ending on a specific date) are false and misleading too.

128. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular list prices and markdown regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

129. Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the statements when purchasing Talbots Products. Defendant's misrepresentations were a substantial factor in each Plaintiff's purchase decision.

130. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Talbots Products.

131. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class.

132. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they

had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

133. For the claims under California's False Advertising Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**Second Cause of Action:**

**Violation of California's Consumer Legal Remedies Act**

**(By Plaintiffs and the Class)**

134. Plaintiffs incorporate each and every factual allegation set forth above.

135. Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

136. Plaintiffs and the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

137. Plaintiffs and the Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

138. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

139. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

140. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

141. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

142. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

143. And Defendant violated, and continues to violate, section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, (4) misrepresenting the reason for the sale (*e.g.*, "Holiday Countdown" when in fact Defendant has ongoing sales).

144. Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

145. Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing Talbots Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decision.

146. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Talbots Products.

147. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class.

148. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

149. Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiffs, on behalf of themselves and all other members of the Class, seek injunctive relief.

150. CLRA § 1782 NOTICE. On April 22, 2025, a CLRA demand letter was sent to Defendant's registered agent and headquarters via certified mail (return receipt requested) on behalf of Ms. Benn, that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Thirty days have now passed and Defendant has not corrected the problem for Ms. Benn and for each member of the Class. Accordingly, Ms. Benn seeks all monetary and equitable relief available under the CLRA, including punitive damages and reasonable attorneys' fees.

151. Out of an abundance of caution, even though Ms. Benn already provided notice to Defendant and demanded correction on behalf of the putative Class and so no further notice was necessary, on May 7, 2025, a CLRA demand letter was sent to Defendant's registered agent and headquarters via certified mail (return receipt requested) on behalf of Ms. Edge, that provided further notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Thirty days have now passed and Defendant has not corrected the problem for Ms. Edge and for each member of the Class. Accordingly, Ms. Edge seeks all monetary and equitable relief available under the CLRA, including punitive damages and reasonable attorneys' fees.

152. Also out of an abundance of caution, on May 23, 2025, a CLRA demand letter was sent to Defendant's registered agent and headquarters via certified mail (return

receipt requested) on behalf of Ms. Schreiman, that provided further notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Thirty days have now passed and Defendant has not corrected the problem for Ms. Schreiman and for each member of the Class. Accordingly, Ms. Schreiman seeks all monetary and equitable relief available under the CLRA, including punitive damages and reasonable attorneys' fees.

153. Also out of an abundance of caution, on November 18, 2025, a CLRA demand letter was sent to Defendant's registered agent and headquarters via certified mail (return receipt requested) on behalf of Ms. Porcuna, that provided further notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Thirty days have now passed and Defendant has not corrected the problem for Ms. Porcuna and for each member of the Class. Accordingly, Ms. Porcuna seeks all monetary and equitable relief available under the CLRA, including punitive damages and reasonable attorneys' fees.

154. Plaintiffs previously filed CLRA venue declarations. *See* Dkts. 1-1, 1-2, 1-3, 1-4.

## **Third Cause of Action:**
## **Violation of California's Unfair Competition Law**
## **(By Plaintiffs and the Class)**

155. Plaintiffs incorporate each and every factual allegation set forth above.

156. Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

157. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

158. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

***The Deceptive Prong***

159. As alleged in detail above, Defendant's representations that its Products were on sale for specific discounts, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving specific discounts were false and misleading.

160. Defendant's representations were misleading to Plaintiffs and other reasonable consumers.

161. Plaintiffs relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

162. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale for specific discounts, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving specific discounts.

163. Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

164. The harm to Plaintiffs and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

165. Plaintiffs and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiffs.

166. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

167. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing Talbots Products. Defendant's representations were a substantial factor in Plaintiffs' purchase decision.

168. In addition, Class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Talbots Products.

169. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class members.

170. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

171. For the claims under California's Unfair Competition Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**Fourth Cause of Action:**

**Breach of Contract**

**(By Plaintiffs and the Class)**

172. Plaintiffs incorporate each and every factual allegation set forth above.

173. Plaintiffs bring this cause of action on behalf of themselves and the Class.

174. Plaintiffs and Class Members entered into contracts with Talbots when they placed orders to purchase Products.

175. The contracts provided that Plaintiffs and Class Members would pay Talbots for the Products ordered.

176. For Non-Markdown Products, the contracts further required that Talbots provide Plaintiffs and Class Members with Products with regular prices and market values equal to the list prices, and a discount equal to the difference between the regular prices and the discount prices paid by Plaintiffs and the putative Class. For Markdown Products that were not advertised as being subject to any additional discount on markdowns, the contracts further required that Talbots provide Plaintiffs and Class Members with Products with pre-markdown regular prices and market values of the list prices, and discounts equal to the difference between the list prices and the advertised markdown prices. For Markdown Products that were subject to additional discounts, the contracts further required that Talbots provide Plaintiffs and Class Members with Products with pre-markdown regular prices and market values of the list price (in strikethrough font), regular markdown prices of the advertised markdown prices (in colorful font), and discounts equal to the difference between the list prices and the markdown prices, plus additional discounts in the amount advertised. These were specific and material terms of the contract.

177. The specific discounts were a specific and material term of each contract, and were displayed to Plaintiffs and Class Members at the time they placed their orders.

178. Plaintiffs and Class Members paid Talbots for the Products they ordered, and satisfied all other conditions of their contracts.

179. Talbots breached its contracts by failing to provide Plaintiffs and other members of the putative Class with Products that have regular, pre-markdown prices and market values equal to the regular prices displayed, and by failing to provide the discounts it promised. And it additionally breached its contracts with Plaintiffs and other Class Members who purchased Markdown Products at an additional discount by failing to provide Plaintiffs and other members of the putative Class with Products that have regular markdown prices equal to the regular markdown prices displayed, and by failing to provide the further discounts promised. Defendant also breached warranties for the same reasons.

180. Plaintiffs provided Defendant with notice of these breaches of contract, by mailing notice letters to Defendant's registered agent and headquarters on May 23, 2025 (on behalf of Ms. Schreiman), May 7, 2025 (on behalf of Ms. Edge), April 22, 2025 (on behalf of Ms. Benn), and November 18, 2025 (on behalf of Ms. Porcuna).

181. As a direct and proximate result of Defendant's breaches, Plaintiffs and Class Members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

182. For the breach of contract claims, Plaintiffs seek all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(By Plaintiffs and the Class)**

183. Plaintiffs incorporate each and every factual allegation set forth above.

184. Plaintiffs bring this cause of action on behalf of themselves and the Class.

185. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Talbots Products, issued material, written warranties by advertising that the regular prices and market values of the Products Plaintiffs and members of the Class purchased before any markdowns were the advertised list prices and warranted that Plaintiffs were receiving specific discounts on the Products. Similarly, Defendant warranted that the advertised markdown prices of the Markdown Products Plaintiffs and members of the Class purchased were the regular prices of those Products when they were marked down. And, Defendant warranted that Plaintiffs and Class Members were receiving specific discounts on the Products (off of the purported list prices and, for Markdown Products sold at a further discount, off the purported markdown regular prices). These were affirmations of fact about the Products (i.e., representations about the regular prices and market values) and promises relating to the goods.

186. These warranties were part of the basis of the bargain and Plaintiffs and members of the Class relied on these warranties.

187. In fact, the Talbots Products' regular prices and market values were not as advertised and affirmed. Thus, the warranties were breached.

188. Plaintiffs provided Defendant with notice of these breaches of warranty, by mailing notice letters to Defendant's registered agent and headquarters on May 23, 2025 (on behalf of Ms. Schreiman), May 7, 2025 (on behalf of Ms. Edge), April 22, 2025 (on behalf of Ms. Benn), and November 18, 2025 (on behalf of Ms. Porcuna).

189. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's breaches, and the breaches were a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

190. For their breach of express warranty claims, Plaintiffs seek all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**<u>Sixth Cause of Action</u>:**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiffs and the Class)**

191. Plaintiffs incorporate paragraphs 1-103 and 110-121 above.

192. Plaintiffs bring this cause of action in the alternative to their Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of themselves and the Class.

193. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiffs and the Class to purchase Talbots Products and to pay a price premium for these Products.

194. In this way, Defendant received a direct and unjust benefit, at Plaintiffs' expense.

195. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiffs and other Class members are void or voidable.

196. Plaintiffs and the Class seek restitution, and in the alternative, rescission.

197. For the quasi-contract/unjust enrichment claims, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(By Plaintiffs and the Class)**

198. Plaintiffs incorporate each and every factual allegation set forth above.

199. Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

200. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and Class Members concerning the existence and/or nature of the discounts and savings advertised.

201. These representations were false.

202. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

203. Defendant intended that Plaintiffs and Class Members rely on these representations and Plaintiffs and Class Members read and reasonably relied on them.

204. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Talbots Products.

205. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and Class members.

206. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

207. For the negligent misrepresentation claims, Plaintiffs seek all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**<u>Eighth Cause of Action</u>:**

**Intentional Misrepresentation**

**(By Plaintiffs and the Class)**

208. Plaintiffs incorporate each and every factual allegation set forth above.

209. Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

210. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and Class Members concerning the existence and/or nature of the discounts and savings advertised.

211. These representations were false.

212. When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

213. Defendant intended that Plaintiffs and Class Members rely on these representations and Plaintiffs and Class Members read and reasonably relied on them.

214. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Talbots Products.

215. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and Class Members.

216. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

217. For the intentional misrepresentation claims, Plaintiffs seek all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

## VII. Relief.

218. Plaintiffs seek the following relief for themselves and the Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed Class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just and equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## Demand For Jury Trial

219. Plaintiffs demand the right to a jury trial on all claims so triable.

Dated: March 12, 2026

Respectfully submitted,

By: /s/ *Simon Franzini*

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*